WILLIAM McKAY, APPELLANT, *v.* THE CITY OF BUFFALO,
RESPONDENT.

*Municipal corporation — Police officers, not agents of — liability of city for acts of —*
*chap.* 720 *of* 1871 — *chap.* 308 *of* 1872.

The police officers of a municipal corporation are not to be deemed its servants
or agents, in such a sense as to render it responsible for the damages occasioned
to third persons by a failure on their part, to duly and properly discharge the
duties imposed upon them.

Under chapter 720 of 1871, as amended by chapter 308 of 1872, providing for the establishment of a police department in the city of Buffalo, the policemen appointed thereunder are not officers of the city, but are wholly independent thereof and are in no sense its servants or agents.

Accordingly *held,* that where a policeman in the city of Buffalo, while shooting a dog supposed to be mad in one of the public streets of the city, in pursuance of the ordinances thereof, so negligently handled his pistol as to shoot and severely wound the plaintiff, that the city was not liable to the latter for the injuries thereby sustained.

APPEAL from a judgment in favor of the defendant, entered upon an order sustaining a demurrer interposed to the complaint, on the ground that the latter did not state facts sufficient to constitute a cause of action.

*John C. Strong,* for the appellant.

*Frank E. Perkins,* for the respondent.

TALCOTT, J. :

This is an appeal from a judgment rendered by the Special Term, sustaining the demurrer of the defendant to the complaint.

The action is brought against the city to recover damages, upon the allegation that one John Clingman, a policeman, while engaged in shooting and killing a dog, supposed to be mad, in the public streets of the said city, " so negligently, carelessly, and imprudently handled and manipulated his pistol that he shot the plaintiff, inflicting a severe and dangerous wound upon him." The defendant demurred to the complaint, for the reason that it did not set forth facts sufficient to constitute a cause of action, and the demurrer has been sustained. The demurrer of course admits all relevant facts which are well pleaded, but not any conclusions of law, and the first and principal point urged by the appellant, is that the demurrer admits that the plaintiff was the agent of the city, and that the attempt to shoot the dog was in due discharge of the duties of his agency ; in other words, that he was the mere servant of the city in discharging the duty of shooting the dog, and that therefore the city is liable upon the maxim *respondeat superior.*

The allegation in the complaint is that the defendant is a municipal corporation, and as a part of its business and duty, assumes

and has authority to appoint, and does appoint, policemen, etc., to enable it to maintain order, and generally perform all those duties with which, as such municipal corporation, it is duly and legally intrusted by law. That the defendant duly and legally appointed the said Clingman as a policeman, and ordered and directed him to perform the usual and ordinary duties of a policeman, and that he entered upon the performance of his duties. That said Clingman, while engaged in the performance of the duty with which he was intrusted *as aforesaid*, to wit, shooting and killing a dog supposed to be mad, in the public streets of the city, so negligently, etc., and that the injury was solely the result of the negligence and carelessness of said Clingman, *while engaged in* the business of the defendant, doing what he had a lawful right to do, as *such* agent of the defendant.

If Clingman was really appointed a policeman by the common council of the city, or by any of the city authorities, and the city had the authority to remove him, and had full control over the police force of the city, a question would be presented which, although not without plausible reasons to be suggested on behalf of the plaintiff, has, nevertheless, whenever presented, been determined against the liability of the municipality.

Where it is sought to make a municipal corporation liable for the acts of its servants or agents, the cardinal inquiry is whether they are servants or agents of the corporation. If the corporation appoints or elects them, and can control them in the discharge of their duties, and continue or remove them, can hold them responsible for the manner in which they discharge their trust; and if those duties relate to the exercise of corporate powers, and are for the peculiar benefit of the corporation and its local and special interest, they may justly be regarded as its servants or agents, and the maxim of *respondeat superior* applies. But if, on the other hand, they are elected or appointed by the corporation, in obedience to the statute, to perform a public service not peculiarly local or corporate, but because this mode of selection has been deemed expedient by the legislature, in the distribution of the powers of government, if they are independent of the corporation as to the tenure of their office and the manner of discharging their duties, they are not to be regarded as the servants or agents of the corpo-

ration for whose acts or negligence it is impliedly liable, but as public or State officers, with such powers and duties as the statute confers upon them, and the doctrine of *respondeat superior* is not applicable. This is the doctrine laid down by Mr. Dillon. (Dillon on Mun. Corp., § 772.) In the next section of his work (§ 773) Mr. Dillon says : "Agreeably to the principles just mentioned, *police officers appointed by a city* are not its agents or servants, so as to render it responsible for their unlawful or negligent acts in the discharge of their duties."

There is obviously a difficulty in the practical application of the distinction between those acts and omissions for which the municipality may be liable, on the ground that the act or omission is that of its servants or agents, as attempted to be expressed by Mr. Dillon, and those for which it is not liable ; and yet that there is a distinction between those acts or omissions of certain classes of officers who are appointed and controlled by a municipal corporation, and for which the municipality is liable in damages, and those for which no such liability can be alleged, is obvious to the common understanding. The attempt to hold a municipal corporation responsible for the shortcomings or negligent performance of their duties by the policemen of a city, is denied by the common judgment of men, without, perhaps, the ability to put into clear language the grounds upon which the case is to be distinguished from those, in which it is generally conceded that the municipality is responsible for the due and proper performance of the duty devolved upon the agent. This difficulty has been presented in various judicial examinations of the subject, where the decision has been adverse to the liability of the city, and yet the attempt to express in precise language the difference between the cases in which the maxim *respondeat superior* applies and cases to which it has no application, is not altogether satisfactory. In *Stewart* v. *The City of New Orleans* (9 Lou. Annual Rep. 461), a detachment of the police officers of the municipality was ordered by its chief to suppress unlawful assemblages of slaves in cabarets. In the performance of this duty they entered a dram-shop in which the slave of the plaintiff was found. The slave attempted to escape, was pursued and overtaken by the watch, and in capturing him they inflicted wounds of which he subsequently died. It was shown

that he might have been arrested without the homicide. The action being brought in one of the District Courts of New Orleans, the plaintiff there recovered, but the judgment was reversed by the Superior Court by a divided bench. In that case Judge CAMPBELL, delivering the opinion of the majority said: "The judgment, we think, is erroneous, and the error results from a failure in the application of the principle to make the proper distinction between the liability of a municipal corporation for acts of its officers, in the exercise of powers which it possesses for public purposes, and which it holds as part of the government of the country."

In *Buttrick* v. *The City of Lowell* (1 Allen [Mass.], 174), which was not strictly an action for negligence, but for an illegal assault and false imprisonment, the court said: "Police officers can in no sense be regarded as the agents or servants of the city. Their duties are of a public nature, their appointment is devolved on cities and towns by the legislature as a convenient mode of exercising the functions of government, but this does not render them liable for their unlawful or negligent acts. * * * Nor does it make any difference, that the acts complained of were done in an attempt to enforce an ordinance or a by-law of the city. They are public laws, of a local and limited operation, designed to secure good order, and provide for the welfare and comfort of the inhabitants. In their enforcement, therefore, police officers act in their public capacity, and not as the agents or servants of the city."

In *Dargon* v. *The Mayor of Mobile* (31 Alabama, 469), where a municipal corporation had authority, under its charter, to pass ordinances forbidding slaves to be abroad at night, or to assemble together without lawful permission, it was held that the corporation was not liable at the suit of the owner, for the loss of a slave who was negligently killed by an officer of the city guard in attempting to arrest him for a breach of such ordinance, on the ground that the power of the city guard was of a political character, conferred on it for public purposes, and that the action was not based on any omission on the part of the city to discharge any duty imposed upon it. And in the opinion delivered in the case, various decisions holding municipal corporations liable for negligence of agents in the discharge of duties imposed by contract and otherwise upon the corporation, were examined and discrim-

inated from the cases of injury, resulting from the negligence of a police officer in discharging such public duties. The principle upon which these cases proceeded is shadowed forth in the case of *Martin* v. *The Mayor of Brooklyn* (1 Hill, 550), and is cited with approval in most of the cases on the subject. In that case, the court, COWEN, J., says: "It is impossible to maintain that a village corporation is liable for a wrong committed by its officers. It is a political body, bound, I admit, and liable to an action when incurring a debt through its corporate officers, acting within the line of their duty, and not for either a nonfeasance or misfeasance committed by independent corporate officers. * * * I concede the liability also of municipal corporations when the duty of repair or the like is absolute, and due from them as a corporation. * * * The relation of master and servant does not exist between the corporation and its officers."

If, then, the allegations of the complaint are to be understood as averments that the policeman mentioned in the complaint was, in fact, appointed by the corporation of the city of Buffalo, and if the shooting of the dog supposed to be mad, and running at large in the public streets, was a part of his duty as such policeman, in obedience to an ordinance of the city, we think the corporation would not be responsible for any negligence in the discharge of such duty, whereby the plaintiff was injured.

But there is another ground upon which the agency of the policeman, Clingman, in behalf of the city may well be denied. By chapter 720 of the Laws of 1871, the city of Buffalo is constituted a separate police district, and a police department was thereby established with the powers and duties by that act provided. By the act, it is provided that the police department shall consist of a board of police commissioners, and a police force appointed by the said board. The management and control of the department are vested in the commissioners. Patrolmen are to be appointed and removed by the board; and the act especially provides (§ 37), that the said board of police commissioners shall at all times cause the ordinances of the city, not in conflict with the act, to be properly enforced.

By the act of 1871, the said police commissioners were to be appointed by the chief judge of the Superior Court of Buffalo.

By an amendatory act (chap 308 of the Laws of 1872), the mayor for the time being, is made *ex officio* one of the police commissioners, and he, by and with the advice of the common council, is to appoint the two other commissioners, but no control whatever over the police force is given to the common council or to the city corporation. The policemen are employed, disciplined, paid and discharged by, and responsible to the board of police commissioners, who have full and absolute control over them in the discharge of their duties. In fact, the police force is entirely separated from the city government, and constitutes an independent organization over which the city has no control whatever. The city has no authority to appoint a policeman, and the allegations in the complaint that the city appointed the said Clingman as a policeman, avers an appointment which, if it is to be understood literally, they had no authority to make. We understand, however, from what transpired on the argument, that the plaintiff only contends that the policemen are, in legal effect, appointed by the city corporation, though, in fact, appointed by the board of police commissioners. We do not agree that such is the legal effect of an appointment under the acts of 1871 and 1872, but, on the contrary, that the policemen appointed under those acts are officers wholly independent of the city, and in no sense its agents or servants, so that the maxim *respondeat superior* can have no application in this case, inasmuch as the city corporation is not the *superior*.

In the case of *Atwater* v. *The Mayor*, etc. (31 Md., 462), it was held that the city of Baltimore was not responsible for the acts of policemen, because the board of police commissioners were not made authorities of Baltimore by any provision of law, and the city was not responsible, because it had no control over the police commissioners. (See, also, *Hafford* v. *New Bedford*, 16 Gray, 299; *Fisher* v. *The City of Boston*, 104 Mass., 87; *Martin* v. *The Mayor of Brooklyn*, *supra*; *Lorillard* v. *The Town of Monroe*, 11 N. Y., 396; *Chegaray* v. *The Mayor*, etc., 13 id., 220.)

We think, therefore, the demurrer was well taken, and was properly sustained.

The judgment is affirmed.

Present — MULLIN, P. J., SMITH and TALCOTT, JJ.

Ordered accordingly.